UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRINE COURTADE,<br><br>  Plaintiff,<br><br>  v.<br><br>ALBERT P. PAPPALARDO,<br><br>  Defendant. | Case No. 14-cv-01594-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING LEAVE TO AMEND COMPLAINT**<br><br>Re: Dkt. No. 14 |

## I.   INTRODUCTION

This case arises from the divorce of Plaintiff Sandrine Courtade and Defendant Albert Pappalardo, and their disputes regarding custody of their minor daughter S.C.P.[1]  Plaintiff is a citizen of France.  Plaintiff's Complaint includes a number of claims based on state law, as well as a claim to "reinforce" Defendant's obligations under the Form I-864 Affidavit of Support that Defendant filed in support of Plaintiff's immigration to the United States.  Defendant has filed a motion to dismiss (the "Motion"), arguing that the Complaint does not fall within this Court's jurisdiction and seeks to impermissibly interfere with state court proceedings.

Although an immigrant may sue in federal court to enforce a sponsor's Form I-864 obligations, Plaintiff's Complaint here fails to state a claim that Defendant has breached such obligations.  The Court lacks subject matter jurisdiction as to Plaintiff's remaining claims.  For the reasons discussed below, Plaintiff's Complaint is therefore DISMISSED with leave to amend.  **Any amendment must be consistent with this Order and filed no later than January 9, 2015**.[2]

---

[1] In keeping with Rule 5.2(a) of the Federal Rules of Civil Procedure, the Court refers to S.C.P. by her initials.  The parties are instructed to do the same, and to omit S.C.P.'s full name, in any future filings.  *See* Order Sealing Documents and Requiring Redaction (dkt. 22).
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.   BACKGROUND

### A.   The Complaint

The Court takes the factual allegations of Plaintiff's Complaint as true for the limited purpose of determining whether it states a claim on which relief may be granted. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Plaintiff and Defendant began an intimate relationship in 2006, and Plaintiff later became pregnant with their child. Compl. (dkt. 1) at 1. Plaintiff moved from France to the United States in July of 2007, but ended the relationship and returned to France in November of that year because Defendant was unwilling to marry. *Id.* at 1−2. The parties' daughter, S.C.P., was born in France in 2008. *Id.* at 2.

Defendant reached out to Plaintiff to persuade her to return to the United States. *Id.* The parties were married in France on June 21, 2008. *Id.* Defendant signed a Form I-864 Affidavit of Support in 2008, in which he agreed to "[p]rovide the intending immigrant [i.e., Plaintiff] any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size." *Id.* at 3 & Ex. A.[3] Plaintiff and S.C.P. arrived in the United States on March 4, 2009. *Id.* at 2.

Defendant filed for divorce in June of 2010. *Id.* Plaintiff alleges that Defendant never intended to remain married to her, and instead used a "sham marriage" to entice her to bring S.C.P. to the United States. *Id.* at 2−3.

The custody status of S.C.P. is not clear from Plaintiff's Complaint. As of July 24, 2014, Plaintiff stated that a decision had not yet been issued. Pl.'s Supp'l Decl. (dkt. 6) ¶ 1. Defendant asserts in his Motion that he was granted sole custody on September 10, 2014. Mot. (dkt. 14) at 1. Plaintiff's Complaint includes allegations that she requested leave to return to France—presumably with her daughter—in 2012, without success. Compl. at 3. Plaintiff also filed an unsuccessful complaint in the family court regarding the evaluator assigned to her case. *Id.* at 3−4.

The Complaint includes a number of other allegations on a range of subjects, some more

---

[3] Plaintiff's Complaint includes a number of supporting documents that are not labeled as exhibits. For convenience, this Order refers to the Form I-864 Affidavit of Support as Exhibit A to the Complaint.

1  specific than others.  Plaintiff alleges that the state court disregarded section 2030 of the California
2  Family Code, which shifts attorneys' fees in divorce cases to promote equal representation based
3  on need for counsel and ability to pay.  *See id.* at 4; Cal. Fam. Code § 2030.  According to
4  Plaintiff, the court's disregard of that statute violated the Unruh Civil Rights Act's prohibition of
5  discrimination.  *See* Compl. at 4 (citing Cal. Civ. Code § 51(b)−(e)).

Plaintiff alleges that she and S.C.P. are victims of domestic violence by Defendant, "through financial and emotional abusive behaviors."  *Id.*  In support of this claim, Plaintiff states that Defendant was aware that Plaintiff would be isolated in the United Stated, as a result of factors including her limited proficiency in the English language.  Plaintiff also states that Defendant "was hiding his salary, bills, and financial means from [Plaintiff] and [Plaintiff] was limited to an allowance which effected the support and basic needs of the family." *Id.* at 4−5.

Since the death of Plaintiff's father on September 6, 2013, Plaintiff alleges that her family members in France have conspired with Defendant to ensure that Plaintiff is not able to return to France and claim her inheritance.  *Id.* at 5.

Plaintiff alleges that her civil rights were denied as a result of inadequate accommodation of her limited English skills during the state court proceedings, lies and inconsistencies in the court-appointed evaluator's report, and Defendant's refusal to provide Plaintiff with S.C.P.'s passport so that it could be renewed before it expired in February of 2013.  *Id.* at 5−6.

Plaintiff feels that she is and her daughter are prisoners in the United States.  *Id.* at 7.  She requests an award of $350,000 from Defendant, plus $50,000 per year that litigation continues beyond 2014.  *Id.*  She also requests that she be permitted to return to France with S.C.P.  *Id.*

The Complaint attaches the following exhibits: Defendant's Form I-864 Affidavit of Support, three letters in support of Plaintiff, and minutes of a state court hearing setting dates for a bench trial "regarding custody and timeshare."  Compl. at ECF page nos. 10−21.

The Complaint invokes federal question jurisdiction based on "[e]nforcement of [the]

/ / /
/ / /
/ / /

3

1   Affidavit of Support (Form I-864)." Compl. at ECF page no. 2.[4]

2       **B.**    **Defendant's Motion to Dismiss**

3   Moving to dismiss, Defendant argues that this Court lacks jurisdiction because "plaintiff's sole purported federal claim is a plea for private enforcement of Department of Homeland Security immigration regulations," for which Defendant contends "there is no private right of action." Mot. at 2. He also argues that aside from the immigration-related claim, Plaintiff's remaining claims are duplicative of an "identical" lawsuit that Plaintiff filed in state court and seek to improperly attack the results of proceedings in the state family court. *Id.* at 2−4. Accordingly, so Defendant argues, the claims are barred by the *Younger* and *Rooker-Feldman* doctrines.

In her Opposition, Plaintiff argues that jurisdiction is proper because federal courts have jurisdiction to enforce a sponsor's obligations created by Form I-864, because "Form I-864 is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant." Opp'n (dkt. 17) at 4 (quoting *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1023 (N.D. Cal. 2008)). She states that she is "not here arguing that her due process rights were violated in the state court proceedings," nor seeking to relitigate the custody determination, but rather seeks "enforcement of her contractual rights under Form I-864." *Id.* at 4−5.

**III.**    **ANALYSIS**

    **A.**    **Legal Standard**

        **1.**    **Subject Matter Jurisdiction**

Defendant has moved to dismiss for lack of federal subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, Plaintiff's Complaint must establish the existence of subject matter jurisdiction in order to proceed in federal court. The Complaint asserts federal question jurisdiction under 28 U.S.C. § 1331. *See* Compl. at ECF page no. 2.

Federal question jurisdiction under § 1331 encompasses civil actions that arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. "A case 'arises under'

---

[4] Much of the Complaint uses continuous page numbers, which this Order cites when available. For the portions that do not—specifically, the first two pages and the documents attached—this Order cites pages numbers as applied by the Court's Electronic Case Filing ("ECF") system.

federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turns on some construction of federal law.'" *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002) (citations omitted). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

### 2. Failure to State a Claim

The Court found Plaintiff to be indigent and granted her application to proceed in forma pauperis on May 28, 2014. *See* Dkt. 5. In cases where a plaintiff is permitted to proceed in forma pauperis, a court has an ongoing obligation to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings that lack such statement fail to state a claim. In determining whether a complaint meets this standard, the court assumes that all factual allegations in the complaint are true. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pertinent question is whether the factual allegations, assumed to be true, "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). Thus, to meet this requirement, the complaint must be supported by factual allegations.

### 3. Standard for a Pro Se Plaintiff

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the

1  complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.
2  2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).
3  Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court
4  must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the
5  litigant uses the opportunity to amend effectively." *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d
6  1258, 1261 (9th Cir. 1992)). "Without the benefit of a statement of deficiencies, the pro se litigant
7  will likely repeat previous errors." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th
8  Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

### B.  Claim Regarding Form I-864

Plaintiff purports to bring this action to "[e]nforce[ the] Affidavit of Support (Form I-864)." Compl. at ECF page no. 2. Plaintiff's Opposition confirms that the action is based primarily on enforcement of Defendant's support obligations under the Form I-864 affidavit. *See generally Opp'n*.

A court of this district has summarized Form I-864 as follows:

> Certain classes of immigrants may be deemed inadmissible including but not limited to, those that may be likely to become a public charge. *See* 8 U.S.C. § 1182(a)(4). Family-sponsored immigrants seeking admission are admissible only if the person petitioning for the immigrants' admission signs an Affidavit of Support Form I-864. A Form I-864 is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant. *See Schwartz v. Schwartz*, 2005 WL 1242171, at *1, 2005 U.S. Dist. LEXIS 43936 at *1-2 (W.D. Okla. May 10, 2005). The signing sponsor submits himself to the personal jurisdiction of any court of the United States or of any State, territory, or possession of the United States if the court has subject matter jurisdiction of a civil lawsuit to enforce the Form I-864. *See* 8 U.S.C. § [1182a(a)(1)(C)].

*Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1023−24 (N.D. Cal. 2008). Defendant's argument that Plaintiff has no private cause of action is incorrect: the statute specifically authorizes a sponsored immigrant to bring an "action to enforce an affidavit of support . . . against the sponsor." 8 U.S.C. § 1183a(e). This Court therefore has jurisdiction to hear such a claim because it arises under the laws of the United States. *See* 28 U.S.C. § 1331.

The Complaint, however, does not include any allegation that that Defendant failed to

1   perform his obligations under Form I-864.  In signing the Form, Defendant agreed to "provide
2   [Plaintiff] any support necessary to maintain . . . her at an income that is at least 125 percent of the
3   Federal Poverty Guidelines."  Compl. Ex. A; *see also* 8 U.S.C. § 1183a(a)(1)(A).[5]  It does not, as
4   Plaintiff suggests, make Defendant broadly "responsible for [Plaintiff] in the United States."  *See*
5   Compl. at 4.  The Complaint alleges that Defendant failed to pay for Plaintiff's representation
6   during the state court proceedings, *id.*, and that he "hid[] his salary, bills, and financial means from
7   [Plaintiff]," *id.* at 5, but neither of those allegations constitutes a breach of Defendant's Form
8   I-864 obligations so long as he provided sufficient financial support to maintain her income at the
9   specified threshold.

10   The Complaint includes no allegation that he failed to do so.  In fact, Plaintiff alleges she
11   "was limited to an allowance which effected the support and basic needs of the family," which is
12   consistent with Defendant fulfilling his obligation.  *Id.* at 5.  Plaintiff's Complaint therefore fails
13   to state a claim that Defendant breached his obligations under Form I-864.

14   It is not, however, "absolutely clear that the deficiencies of the complaint could not be
15   cured by amendment."  *See Akhtar*, 698 F.3d at 1212.  Although a plaintiff may not save a
16   complaint by amending to contradict earlier allegations, *see United States v. Corinthian Colleges*,
17   655 F.3d 984, 995 (2011), the allegations of Plaintiff's Complaint do not establish that Defendant
18   fulfilled his obligations and that amendment would be futile.  Plaintiff has not alleged that the
19   "allowance" caused her income to meet or exceed 125 percent of the Federal Poverty Guidelines.
20   If Defendant has in fact failed to perform his obligations under Form I-864, Plaintiff may amend
21   her Complaint to allege specific facts demonstrating that Defendant has breached that agreement.

22   At the hearing held on November 14, 2014, Plaintiff conceded that Defendant has paid
23   monthly spousal support in the amount of $2500 per month through 2012 and $1900 per month
24   through the present year.  Such payments likely satisfy Defendant's present obligations under
25   Form I-864.  The parties indicated that these payments have been made pursuant to a family court
26   stipulation, which provides that payments shall cease in January of 2015.  Defendant conceded

---

[5] Defendant also agreed to notify the United States Citizenship and Immigration Services of any change of his address.  Compl. Ex. A.  Plaintiff has not alleged any violation of this clause.

7

that Plaintiff reserved her rights under Form I-864 in the family court stipulation.  Because the parties appear to disagree on the nature of Defendant's obligations going forward, declaratory judgment may be appropriate to determine the parties' rights and obligations with respect to Form I-864.  Plaintiff's present Complaint, however, includes no request for declaratory relief.

### C. Claim Regarding Civil Rights

One section of Plaintiff's Complaint is captioned "Civil Rights," and appears to relate primarily to the conduct of the Superior Court.  *See* Compl. at 5−6.  Plaintiff alleges that the Superior Court did not sufficiently accommodate her limited English language proficiency and, after Plaintiff filed a complaint regarding the evaluator, ordered an update by the same evaluator.  *Id.* at 6.   The Superior Court is not a defendant in this action, and these allegations do not support any claim against Defendant Pappalardo.

Although Plaintiff could perhaps amend her Complaint to name the Superior Court as a defendant, claims against the state court would raise issues of state immunity under the Eleventh Amendment to the United States Constitution, as well issues related to the *Rooker-Feldman* doctrine, under which federal courts generally lack jurisdiction to review claims that explicitly or implicitly challenge a state court decision.  *See Muhammad v. Berreth*, No. C 12-02407 CRB, 2013 WL 684918, at *3−4 (N.D. Cal. Feb. 25, 2013) (dismissing claims against a California Superior Court based on both of these doctrines).  In particular, as Plaintiff appears to acknowledge in her Opposition, this Court may not consider claims that the state court proceedings violated Plaintiff's due process rights.  Any injury related to such violations would necessarily "result[] from the state court judgment itself," and "the *Rooker-Feldman* doctrine . . . precludes review of all state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900−901 (9th Cir. 2003) (citations and internal quotation marks omitted).  If such violations occurred, Plaintiff's sole remedy is through the state appellate process.  Plaintiff may not amend her Complaint in this Court to add claims barred by the Eleventh Amendment or by the *Rooker-Feldman* doctrine.

The same section of Plaintiff's Complaint alleges that Defendant refused to provide

S.C.P.'s French passport to Plaintiff so that it could be renewed before it expired in February of 2013. Compl. at 6. This allegation does not present a claim within this Court's jurisdiction, because Plaintiff does not allege facts or cite authority supporting a conclusion that Defendant had any legal obligation, much less an obligation under federal law, to provide S.C.P.'s passport to Plaintiff at that time.

### D. This Court Lacks Jurisdiction as to Plaintiff's Remaining Claims

#### 1. Federal Question Jurisdiction

Two of the remaining claims in the Complaint explicitly rely on state law. The defamation claim cites California Civil Code section 44. Compl. at 3. The discrimination claim cites California Civil Code section 51, and California Family Code section 2030. *Id.* at 4. Because these claims arise under state law, and Plaintiff has not alleged that they "necessarily turn[] on some construction of federal law," they do not raise a federal question. *See Republican Party of Guam*, 277 F.3d at 1088.

The Complaint includes a claim for domestic violence, based on "financial and emotional abusive behavior." Compl. at 4−5. Federal law, as opposed to state law, does not generally provide a civil remedy for domestic violence. In *United States v. Morrison*, the Supreme Court held that Congress's attempt to provide such a remedy through the Violence Against Women Act exceeded the federal legislative authority, and that although "no civilized system of justice could fail to provide [victims of domestic violence] a remedy . . . under our federal system that remedy must be provided by the [individual states], and not by the United States." 529 U.S. 598, 627 (2000). Plaintiff has not alleged any special circumstances or cited any authority that would bring her alleged abuse within the realm of federal law. Thus, any claim that that Plaintiff may have based on domestic violence would arise under state law, and does not raise a federal question.

The Complaint also includes a claim for "conspiracy." Compl. at 5. As Judge Illston explained in a 2013 decision, conspiracy is not an independent cause of action under either California law or federal law:

> Under state law, a conspiracy is not a separate cause of action and instead is a way to hold additional persons liable for torts committed by others. *See Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 784,

9

> 157 Cal. Rptr. 392, 598 P.2d 45 (Cal. 1979). Similarly, a conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983, but "may enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

*Pagtakhan v. Doe*, No. C 08-2188 SI (pr), 2013 WL 3052856, at *4 (N.D. Cal. June 17, 2013). Thus, given that Plaintiff has not stated any other claim arising from federal law, her allegations of conspiracy cannot create federal question jurisdiction.

### 2. Other Grounds for Jurisdiction

Other than federal question jurisdiction under 28 U.S.C. § 1331, two of the most common grounds for federal subject matter jurisdiction are diversity jurisdiction pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiff has not invoked either basis for jurisdiction, and neither applies to this case.

28 U.S.C. § 1332(a) provides for jurisdiction encompassing "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States [or between] citizens of a State and citizens or subjects of a foreign state." When diversity jurisdiction arises from the involvement of foreign citizens, however, it does not extend to "an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." *Id.* § 1332(a)(2). Here, Plaintiff has not asserted diversity jurisdiction and there is insufficient evidence in the record to conclusively determine Plaintiff's immigration status. It appears, however, that Plaintiff is admitted for permanent residence and domiciled in California, and that Defendant is a citizen of California. If that is so, diversity jurisdiction is not available. If not, it is conceivable that Plaintiff could amend her Complaint to assert diversity jurisdiction.

28 U.S.C. § 1367 provides that where a district court has subject matter jurisdiction over some claims in an action, the court also has jurisdiction over "all other claims that are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." The test for whether claims form part of the same or controversy is whether they share a "common nucleus of operative facts." *See Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1288 (9th Cir. 2013). Here, Plaintiff cannot assert jurisdiction under § 1367 because

1  her only putative federal claim relates to Defendant's alleged failure to provide support pursuant to
2  Form I-864, and none of her other putative claims arise from the facts of Defendant's payment or
3  failure to pay monetary support.[6]

4  The Court therefore finds no basis for subject matter jurisdiction over Plaintiff's state law
5  claims. Without jurisdiction, the Court need not further address Defendant's arguments regarding
6  *Younger* abstention and the *Rooker-Feldman* doctrine, or whether the Complaint adequately
7  pleads its state-law claims.

### E. Hague Convention

The Court addresses one other potential claim that is not expressly raised in Plaintiff's Complaint. The Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") is an international treaty that has been implemented in the United States through the International Child Abduction Remedies Act ("ICARA"). *See Chafin v. Chafin*, 133 S. Ct. 1017, 1021 (2013) (citing 42 U.S.C. § 11601 *et seq.*, subsequently renumbered as 22 U.S.C. §§ 9001−11). The Convention "seeks 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State' and 'to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Id.* (quoting Convention, art. 1). "Article 3 of the Convention provides that the 'removal or the retention of a child is to be considered wrongful' when 'it is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention' . . . ." *Id.* (quoting Convention, art. 3).

The Convention, as implemented by ICARA, is the only authority that the Court is aware of that permits a district court to vacate a state court's custody order in certain circumstances. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (stating that "federal courts . . . have the

---

[6] Because the claims do not arise from the same common nucleus of facts, the Court need not determine whether it would retain jurisdiction over state law claims after dismissing Plaintiff's federal cause of action, as discussed above, for failure to state a claim on which relief can be granted. The Court notes, however, that "[t]he Supreme Court has stated, and [the Ninth Circuit] has often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) (ellipsis in original).

power to vacate state custody determinations and other state court orders that contravene the treaty" (citation omitted)).  Even affording Plaintiff "the benefit of any doubt," however, *see Hebbe*, 627 F.3d at 342, the Court cannot construe Plaintiff's present Complaint as stating a claim under ICARA and the Convention.  Plaintiff has not alleged facts supporting a plausible conclusion that any "removal or retention" of S.C.P. breached any lawful custodial right.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED.  Plaintiff's Complaint is DISMISSED WITH LEAVE TO AMEND.

If Plaintiff wishes to file an amended complaint, she may do so **no later than January 9, 2015.**  The first amended complaint must include the caption and civil case number used in this Order (14-cv-01594-JCS) and the words FIRST AMENDED COMPLAINT on the first page.  Because an amended complaint completely replaces the previous complaint, any amended complaint must include all the claims Plaintiff wishes to present and all of the defendants she wishes to sue.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  An amended complaint may not incorporate material from the prior complaint by reference; it must stand on its own.  Any amended complaint in this case must address the deficiencies discussed above.

The Court recommends that the parties obtain representation if possible.  If Plaintiff chooses to amend her Complaint, she is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance if she is unable to secure representation.  The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102.  The Oakland office is located in Room 470-S on the 4th floor at 1301 Clay Street, Oakland, CA 94612.  Appointments can be made by calling (415) 782-8982 or signing up in the appointment book located outside either office.  Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

/ / /

/ / /

/ / /

1  The Court understands that Defendant has been advised that the Legal Help Center cannot
2  assist him due to a conflict of interest.  If Defendant is unable to obtain representation, he is
3  encouraged to inquire with the San Francisco Bar Association or the Alameda County Bar
4  Association regarding the possibility of obtaining assistance.

5  **IT IS SO ORDERED.**

6  Dated: November 14, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge